IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CARL N. ANDERSON, JR., and JEAN ANDERSON, on behalf of and as Co-Trustees of THE CARL ANDERSON FAMILY PROTECTION TRUST, and CARL N. ANDERSON, III,<br><br>     Plaintiffs,<br><br>v.<br><br>WEBER COUNTY, RYAN ARBON, BRANDON ROUNDY, ANDREW DAUGHETEE, and JOHN DOES 1–5,<br><br>     Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND REMANDING REMAINING CLAIMS<br><br>Case No. 1:23-cv-00035-JNP-CMR<br><br>Chief District Judge Jill N. Parrish<br><br>Chief Magistrate Judge Cecilia M. Romero |

Defendants Weber County, Ryan Arbon, Brandon Roundy, and Andrew Daughetee (collectively "Defendants")[1] move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ECF No. 35 ("Defs.' Mot."). For the reasons below, the motion is GRANTED IN PART and DENIED IN PART. Plaintiffs' federal law claims are DISMISSED WITH PREJUDICE. Plaintiffs' remaining state law claims are REMANDED to the Second Judicial District Court in and for the County of Weber, State of Utah.

---

[1] Plaintiffs also bring claims against five John Doe defendants who are referred to separately.

**BACKGROUND**

This case stems from a property dispute between Plaintiff Carl N. Anderson, III ("Anderson III") and Lee and Andrea Smith (collectively the "Smiths") regarding a forty-foot strip of property. ECF No. 32 ("Third Am. Compl.") at 1–2. Plaintiffs allege that the Carl N. Anderson Family Protection Trust (the "Trust") "had historically used [this strip] to access its land," which otherwise would be inaccessible. *Id.* ¶ 10.

After Anderson III and the Smiths began disputing the use of the strip, "[t]he Weber County Sheriff's Office was called in response," and two deputy sheriffs arrived on the scene, including Daughetee. *Id.* ¶ 11. Daughetee acknowledged "that he lacked the legal authority to . . . resolve the dispute," but he "had both parties agree to maintain the status quo until the issue could be resolved through the appropriate legal channels." *Id.* ¶¶ 15–16. Notwithstanding this agreement, the Smiths called Daughetee back and he declared that the disputed strip belonged to the Smiths based on his own measurements and "Weber County GIS [i]nteractive maps." *Id.* ¶¶ 17–21. Anderson III, as an attorney, "attempted to explain to Daughetee that he lacked the authority under the law to make such a determination," but Daughetee insisted that the "maps together with his own measurements [were] 'legally binding.'" *Id.* ¶¶ 22–23. Daughetee told Anderson III that this "decision was final under the law" and that "[Anderson III] was forbidden from returning to or using the [disputed] property." *Id.* ¶ 24. After Anderson III again challenged Daughetee's authority, Daughetee replied that "a civil court would hold [Anderson III] financially responsible to the Smiths if he altered the disputed property because the Trust did not own the disputed land." *Id.* ¶ 25.

Even though the Smiths' own surveyor had found that the disputed strip belonged to the Trust, the Smiths "began parking a truck on the disputed property" to impede the Trust's access

based on some combination of "the illegal Daughetee decree" and Daughetee's "unauthorized legal advice." *Id.* ¶¶ 26–29. When Anderson III reached out to the Sheriff's Office to address the parked car, Daughetee returned to the scene and reaffirmed that the Smiths had the right to the strip and represented that he was acting with the approval of his sergeant. *Id.* ¶¶ 30–34.

The Smiths, again acting "in apparent reliance on Daughetee's unauthorized decree," then proceeded to install "a barbed wire fence" and "two . . . large concrete barriers" to "permanently" block the Trust from accessing its property. *Id.* ¶¶ 38–40. Anderson III "demanded that the Smiths remove the concrete barriers" and cited his own professional survey, which indicated that the Trust owned the strip. *Id.* ¶¶ 36–37, 41–42. Rather than acquiesce, the Smiths again contacted the Weber County Sheriff's Office. *Id.* ¶ 43. Two different deputies arrived and insisted that the Smiths owned the strip based on a variety of legal theories, notwithstanding two professional surveys indicating otherwise. *Id.* ¶¶ 43–47. The deputies "refused to have the Smiths remove the concrete barriers" on the ground that the property dispute "was a 'civil matter' [over] which [they] could not get involved," but they simultaneously threatened to arrest Anderson III for disorderly conduct "if he ever came back" onto the strip. *Id.* ¶¶ 48–50.

The Trust's attorney, Richard Matheson, asked the Weber County Sheriff, Arbon, to intervene. *Id.* ¶ 54. But Arbon "refused to take any action" and directed Matheson to contact Roundy, "the officer who was assigned to Uintah," who in turn refused to meet with Matheson. *Id.* ¶¶ 54–55. At this point, "the Trust realized it was wasting its resources in trying to resolve th[e] matter through . . . Roundy," and neither the Trust nor its beneficiaries "were able to access any of the Trust's land for [the next four] years." *Id.* ¶¶ 51, 55.

Eventually, the Trust brought a quiet title action against the Smiths and separately commenced an action in Utah state court against Daughetee, Arbon, Roundy, and Weber County,

which was removed to this court. *Id.* ¶ 114; ECF No. 2-2 ("Am. Compl."); ECF No. 2 ("Notice of Removal"). After Carl N. Anderson, Jr. and Jean Anderson were added as co-plaintiffs, the court dismissed the second amended complaint without prejudice for failure to state a claim. ECF No. 23 ("Second Am. Compl."); ECF No. 30 ("Mem Decision & Order to Dismiss"). The court "emphasize[d] that the need for it to speculate in order to decipher what claim Plaintiffs assert[ed] in [the then-operative] complaint underscore[d] [its] complete lack of clarity." Mem Decision & Order to Dismiss at 7.

Plaintiffs, now also including Anderson III, filed a third amended complaint, raising several claims against Defendants and five John Does consisting of the following: (1) civil rights violations by government officials under a variety of statutory provisions, including 42 U.S.C. § 1983; (2) civil conspiracy to deprive constitutional rights under 42 U.S.C. § 1985(3); (3) negligence; and (4) fraudulent concealment. Third Am. Compl. ¶¶ 59–109. Although the operative complaint purports to bring an independent claim for punitive damages, Plaintiffs' counsel clarified that Plaintiffs seek punitive damages in connection to their first two claims and do not have a stand-alone claim for punitive damages. *Id.* ¶¶ 110–19.

Defendants filed an answer and then moved for judgment on the pleadings under Rule 12(c), asking the court to dismiss the operative complaint with prejudice. ECF No. 34 ("Answer"); Defs.' Mot. In the motion, Defendants first object on procedural grounds that the third amended complaint improperly expanded the scope of the litigation and briefly suggest that this court lacks subject matter jurisdiction based on mootness. Defs.' Mot. at 3–7, 18–19. They then object that Plaintiffs fail to state a claim for relief on numerous alternative grounds. *Id.* at 9–18. Plaintiffs fully oppose the motion. ECF No. 36 ("Pls.' Opp'n"). Both parties further clarified their positions at a hearing before the court. ECF No. 43 ("Hr.").

**LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay the trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Such a motion "is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000). Dismissal is appropriate if the plaintiff's "allegations fail to 'state a claim to relief that is plausible on its face.'" *See Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In evaluating a Rule 12(b)(6) or 12(c) motion, the court takes the plaintiff's well-pleaded facts as true, drawing all inferences in the plaintiff's favor. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006); *see also Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) ("The court's function . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted.") (citation modified). But the plaintiff must allege some facts, not just legal conclusions, to support his claims. *See Anupama Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019). "Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient." *Id.* (quoting *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013)). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "the plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

**DISCUSSION**

After first addressing the threshold issue of whether the case is moot, the court turns to the substance of Plaintiff's claims under federal law and concludes that they should be dismissed with

prejudice. Declining to exercise supplemental jurisdiction, the court remands Plaintiffs' remaining state law claims.

## I.      Mootness

Defendants suggest that "[a]ny claim for damages or equitable relief is . . . moot" because Plaintiffs have received a judgment in state court that "fully and finally resolve[s] the underlying property dispute between Plaintiffs and the Smiths."[2] Defs.' Mot. at 18–19. The court must address this argument first because it implicates the court's subject matter jurisdiction. *See McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) ("Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction.").

The crux of the "mootness inquiry is whether granting a present determination of the issues offered will have some effect in the real world." *Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1266 (10th Cir. 1999) (citation modified). Defendants, as the party asserting mootness, "bear[] the burden to establish that a once-live case has become moot." *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022). *See also Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) ("The burden of demonstrating mootness 'is a heavy one.'") (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632–33 (1953).

Here, Defendants clearly have failed to meet their burden because there remains a live controversy over whether Plaintiffs are entitled to compensatory and punitive damages for Defendants' alleged legal violations. Third Am. Compl. at 28. *See Taxpayers for the Animas-La*

---

[2] The court takes judicial notice of the state court judgment under Federal Rule of Evidence 201(b)(2). *See* Answer at 2; ECF No. 34-1 ("Answer Ex. A").

*Plata Referendum v. Animas-La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1479 (10th Cir. 1984) ("[B]y definition claims for past damages cannot be deemed moot."). While these damages may be less substantial in light of the state court judgment, the possibility of any damages—even nominal damages—suffices to avoid mootness. *Utah Animal Rts. Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1257–58 (10th Cir. 2004). Thus, the court may exercise jurisdiction and determine whether the operative complaint asserts a claim for relief.[3]

## II.   Federal Claims

Notwithstanding some lack of clarity in the operative complaint,[4] Plaintiffs' counsel confirmed in oral argument that only the first two claims for relief are federal claims that can form the basis for federal question jurisdiction under 28 U.S.C. § 1331. Third Am. Compl. ¶¶ 59–86. The court concludes that both must be dismissed. Given Plaintiffs' ample opportunities to amend their pleadings, the court determines that further amendment would be futile and dismisses both federal claims with prejudice.[5] *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim . . . and granting leave to amend would be futile.").

---

[3] Besides a cursory reference to "any such other relief as the [c]ourt deems just and equitable," Plaintiffs' request for relief seeks only damages and reasonable attorney fees. Third Am. Compl. at 28–29. Thus, the court need not address whether there is a live controversy for other forms of relief.

[4] For example, Plaintiffs' counsel clarified that the third claim for relief is brought under state tort law, even though the relevant section of the operative complaint contains a cursory reference to the federal constitution. Third Am. Compl. at 20.

[5] Because the court dismisses all the federal claims with prejudice, Plaintiffs' request for punitive damages in connection to their federal claims is similarly dismissed with prejudice. Third Am. Compl. ¶¶ 110–19.

A.      First Claim

Plaintiffs' first claim is for civil rights violations by government officials and is purportedly brought under 42 U.S.C. §§ 1981–83, 1985. Third Am. Compl. at 12. However, at the hearing Plaintiffs' counsel conceded that the only applicable provision for this claim is § 1983 and that it should be dismissed to the extent that it relies on other statutory provisions. In analyzing what remains of Plaintiffs' first claim, the relevant analysis varies depending on the defendant and is discussed in detail below. But the court concludes that Plaintiffs fail to adequately allege a § 1983 claim against any defendant, which means the first claim must be dismissed in its entirety.

1)      Named Officer Defendants

Plaintiffs assert § 1983 claims against the named officer defendants, Arbon, Roundy, and Daughetee, who all raise qualified immunity as a defense. Answer at 15; Defs.' Mot. at 10–12. Thus, Plaintiffs "must allege sufficient facts that show—when taken as true—the [officers] plausibly violated [Plaintiffs'] constitutional rights, which were clearly established at the time of violation." *Hunt v. Montano*, 39 F.4th 1270, 1278 (10th Cir. 2022) (quoting *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012)) (citation modified). Qualified immunity does "not require a case directly on point, but existing precedent must have placed the [relevant] statutory or constitutional question[s] beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). *See also Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) (holding that, in order to pierce qualified immunity, a plaintiff must either "(1) identif[y] an on-point Supreme Court or published Tenth Circuit decision[] or (2) show[] the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains") (citation modified).

Here, Plaintiffs allege that the officers "caused Plaintiffs to be subjected to deprivation of their right to their property secured by the United States Constitution and laws" through numerous

actions and omissions in connection to the land dispute. Third Am. Compl. ¶¶ 67, 69–70. While the complaint itself fails to identify any applicable constitutional provisions or doctrines, Plaintiffs invoke in their opposition brief their Fourteenth Amendment rights to "not be deprived of life, liberty or property, without due process of law." Pls.' Opp'n at 20; U.S. Const. amend. XIV, § 1. At the hearing, Plaintiffs' counsel clarified that the heart of the § 1983 claim is that the officers deprived Plaintiffs of their property without due process by threatening to arrest Anderson III if he returned to his property. However, the operative complaint contains no allegations that any of the named officer defendants threatened to arrest Anderson III. Rather, it only alleges that two unnamed officers threatened to arrest Anderson III for disorderly conduct once Daughetee was apparently no longer involved in the incident. Third Am. Compl. ¶¶ 49–51. Because liability under § 1983 requires officers to be "personally involved in the underlying violations through their own participation or supervisory control" and Plaintiffs allege no such personal involvement, the threatened arrests—however unconstitutional they may be—do not support a § 1983 claim against the named officer defendants. *Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018).

And Plaintiffs also fail to plead a § 1983 claim against Arbon and Roundy. Besides conclusory allegations that Arbon and Roundy "intentionally excluded . . . evidence" and "colluded to use more pretext[] to attempt to exonerate the Weber County Sheriff's Office," the remaining allegations suggest that Arbon and Roundy simply did not want to get involved in the incident. Third Am. Compl. ¶¶ 54–58. Plaintiffs fail to explain how this conduct rises to the level of a constitutional violation—let alone a clearly established constitutional violation that can overcome qualified immunity.

Plaintiffs' allegations against Daughetee are more concerning. *See id.* ¶¶ 11–25. Daughetee allegedly acknowledged that he lacked any authority to resolve the boundary dispute but

nonetheless attempted to resolve it and wrongfully represented that his own determination was legally binding. *Id.* ¶¶ 14–15, 19–25. But even if this establishes that Daughetee violated clearly established state law by exceeding the scope of his office, this does not necessarily mean that he violated clearly established federal law, which is the relevant inquiry. *See Cummings v. Dean*, 913 F.3d 1227, 1242–43 (10th Cir. 2019) (reversing a lower court's denial of qualified immunity "because it equate[d] a violation of a clear obligation under *state* law with a violation of clearly-established *federal* law") (emphasis in original) (footnote omitted).

To be sure, there may be a colorable argument that Daughetee unconstitutionally deprived Plaintiffs of their property when the Smiths "blockade[d]" the disputed strip with their truck, barbed wire, and concrete barriers based on Daughetee's determination. Third Am. Compl. ¶¶ 28–29, 38–40. But this constitutional challenge implicates difficult legal questions, such as whether the Smiths' conduct is attributable to Daughetee and whether he acted with the requisite mental state to implicate due process protections. *See, e.g.*, *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir. 1995) ("[T]he mere acquiescence of a state official in the actions of a private party is not sufficient [to constitute state action]."); *Allen v. Cooper*, 589 U.S. 248, 261 (2020) ("[A] merely negligent act does not 'deprive' a person of property.") (quoting *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). Because the complaint's allegations suggest that Daughetee himself never had knowledge of the land surveys indicating that the Trust owned the disputed land and never directly exercised his authority as a law enforcement officer, his actions may have only reflected a negligent attempt to resolve the dispute in an informal capacity.

More importantly, however, even if Plaintiffs have alleged that Daughetee violated their constitutional rights, they have not alleged a violation of clearly established constitutional rights

that can overcome qualified immunity.[6] To meet their burden, Plaintiffs cite three authoritative cases, but none are sufficiently on point to clearly establish a constitutional violation. Pls.' Opp'n at 22. *See Blum v. Yaretsky*, 457 U.S. 991, 1004–12 (1982) (holding that the actions of private nursing homes were not sufficiently connected to the government to constitute state action); *Marcus v. McCollum*, 394 F.3d 813, 816–17, 824 (10th Cir. 2004) (holding that the officer's use of "physical action and verbal threats" to support a private company's blatantly unlawful repossession of a car violated clearly established law), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1118 (10th Cir. 2008) (holding that an officer who prevented the plaintiff from returning to her own home to stop another individual from taking her personal property through threatened arrests violated clearly established law). These cases—involving officers who directly threatened arrest or applied physical force— fall short of "mak[ing] it apparent" that the officer defendants in this case violated federal law. *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1210 (10th Cir. 2017).

While Plaintiff cites more non-binding cases, they are insufficiently analogous and definitive to clearly establish a constitutional violation. *See* Pls.' Opp'n at 22–23 (collecting cases). Most of the cases address only the question of whether the Smiths' actions may qualify as

---

[6] Here, the court exercises its "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

state action[7] or are simply irrelevant.[8] Plaintiffs' counsel at argument emphasized two cases that are more relevant, but they are still insufficient. In *Abbott v. Latshaw*, the Third Circuit found that an officer violated clearly established law by resolving a property dispute over a van, but this holding was based on evidence that the officer arrested and grabbed one of the disputants for failing to abide by his determination. 164 F.3d 141, 144–45, 149 (3d Cir. 1998). Similarly, in *Harris v. City of Roseburg*, the Ninth Circuit found a constitutional violation when an officer threatened to arrest a party for lawfully resisting repossession. 664 F.2d 1121, 1127 (9th Cir. 1981). Here, however, Plaintiffs have not alleged that Daughetee threatened arrest or exercised physical force. These cases, therefore, fall short of "clearly establish[ing] [the] law for the particularized facts in this case" in the manner necessary to overcome qualified immunity. *Flores v. Henderson*, 101 F.4th 1185, 1197 (10th Cir. 2024).

Of course, a "right can be clearly established notwithstanding the absence of binding authority involving materially similar facts." *Ullery v. Bradley*, 949 F.3d 1282, 1291–92 (10th Cir. 2020). But this exception applies only when "a general precedent applies with obvious clarity," and the allegations against Daughetee turn on complex questions regarding his state of mind and

---

[7] *See Barrett v. Harwood*, 189 F.3d 297, 302 (2d Cir. 1999) (acknowledging that a private repossession may count as state action if an officer is sufficiently involved but emphasizing that "no bright line has been drawn delineating the exact point at which" such state action occurs); *Greco v. Guss*, 775 F.2d 161, 168 (7th Cir. 1985) (holding that the evidence was consistent with state action in the context of summary judgment); *Howerton v. Gabica*, 708 F.2d 380, 384 (9th Cir. 1983) (holding that whether office involvement turns a private eviction into state action turns on the totality of the circumstances); *Jones v. Gutschenritter*, 909 F.2d 1208, 1211–12 (8th Cir. 1990) (holding, in the context of summary judgment, that there was a triable fact as to whether the officer actively assisted a private party in shutting off electricity).

[8] *See United States v. Warshak,* 631 F.3d 266, 283–292 (6th Cir. 2010) (holding that government surveillance of emails violated the Fourth Amendment but the exclusionary rule should not apply because the government relied in good faith on a statute).

the connection between his actions and the Smiths' actions. *Id.* at 1291 (citation modified). Irrespective of its merits,[9] this court is bound to apply qualified immunity doctrine as it has been developed by the Tenth Circuit and the Supreme Court, and it finds that Plaintiffs have failed to overcome qualified immunity with respect to Daughetee.

In summary, because Plaintiffs have failed to plausibly allege that the named officers violated a clearly established constitutional right, the court dismisses the § 1983 claims against the officers with prejudice.

> 2)    Weber County

While Plaintiffs' § 1983 claim against Weber County does not implicate qualified immunity, it does implicate the standard for municipal liability articulated in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690–95 (1978).[10] Under *Monell*, a plaintiff bringing a § 1983 claim against a municipality must first demonstrate a "municipal policy or custom" taking one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as

---

[9] *See, e.g.*, *Caldwell v. Univ. of New Mexico Bd. of Regents*, 679 F. Supp. 3d 1087, 1142 n.18, 1144 & n.19 (D.N.M. 2023) (collecting criticism from jurists and scholars).

[10] To be sure, the operative complaint does not even clearly establish that the first claim for relief is even brought against Weber County and its caption in fact suggests otherwise. Third Am. Compl. ¶¶ 59–78. But, for the sake of argument and based on the parties' understanding, the court assumes that the complaint at least purports to bring a § 1983 claim against Weber County.

> that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)). They then "must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Id.* at 1284 (quoting *Bryson*, 627 F.3d at 788). When "a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997).

Defendants first argue that Plaintiffs have failed to "identify any official policy or custom of Weber County that caused injuries or constitutional violations" and, consequently, the § 1983 claim against Weber County must be dismissed. Defs.' Mot. at 9–10. They then argue that "[e]ven assuming a policy or custom had been alleged, there are no factual allegations establishing a direct causal connection between Weber County and Plaintiffs' injuries, as required by *Monell*." *Id.* at 9.

In response, Plaintiffs first suggest that their claim against Weber County should survive even if it "is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." Pls.' Opp'n at 10 (quoting *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 165 (1993)). But *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit* merely held that the normal pleading standard under Federal Rule of Civil Procedure 8(a) applies to *Monell* claims rather than a heightened standard.[11] *Leatherman*, 507 U.S. at 167–68. It in no way suggests that threadbare and

---

[11] Indeed, Plaintiffs cite language in *Leatherman* that occurs in the context of describing the Ninth Circuit's side of a circuit split, which is not directly endorsed by the Supreme Court. *See*

14

conclusory allegations, which otherwise are inadequate under Rule 8(a), suffice to plead a *Monell* claim. And the Tenth Circuit has directly held that the elements of *Monell* liability—including both the existence of "an official policy or custom" and "causation"—must be adequately pled under Rule 8(a) to state a § 1983 claim against a municipality. *See Est. of Burgaz by & through Zommer v. Bd. of Cnty. Commissioners for Jefferson Cnty. Colorado*, 30 F.4th 1181, 1189 (10th Cir. 2022). Thus, Plaintiff must allege some non-conclusory facts that plausibly establish *Monell* liability.

In trying to meet this burden, Plaintiffs argue that "there [was] a ratification of [impermissible] actions by . . . final policy makers." Pls.' Opp'n at 11. The closest the complaint comes to alleging such a ratification is the allegation that Daughetee "claimed that his [s]ergeant completely supported [his] actions and decisions as being lawfully undertaken." Third Am. Compl. ¶ 34. But, even here, the complaint fails to allege that this unnamed sergeant had final policymaking authority. *See Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (outlining the standard for final policymaking authority). And even if final policymaking authority were somehow alleged, Plaintiffs fail to allege that this ratification by the unnamed sergeant caused their injuries. While Plaintiffs briefly argue that there is a policy or custom based on the failure to train or supervise employees, imposing liability in this manner requires "demonstrat[ing] that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting *Brown*, 520 U.S. at 407). The events alleged in the complaint do not plausibly establish this "stringent standard of fault." *Brown*, 520 U.S. at 410.

---

*Leatherman*, 507 U.S. at 165 (citing *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988)).

Having found that the complaint fails to plausibly allege the elements for municipal liability under *Monell*, the court dismisses the § 1983 claim against Weber County with prejudice.[12]

### 3) Doe Defendants

Plaintiffs also bring a § 1983 claim against five Doe defendants, which Defendants argue were improperly added to the operative complaint. Third Am. Compl. ¶¶ 6, 68; Defs.' Mot. at 5–6. But, irrespective of Defendants' argument about the propriety of the addition, the court holds that Plaintiffs have simply failed to plead any § 1983 claim against the Doe defendants and, consequently, such claims must be dismissed under Rule 12(c).

Even when officers do not assert qualified immunity, "[§ 1983] liability [must] be predicated on a violation [of federal law] traceable to a defendant-official's 'own individual actions.'" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 676). Thus, "Plaintiff[s] must allege specific facts to show that [the Doe] defendant[s] w[ere] personally involved in a deprivation of [their] federal constitutional or statutory rights." *Banks v. Colorado*, No. 19-CV-00269-GPG, 2019 WL 13214050, at *3 (D. Colo. Feb. 1, 2019).

With respect to three Doe defendants, the complaint alleges only that they are employed by "the Weber County Sheriff's Office [or] Weber County" and are "additionally . . . liable in this matter." Third Am. Compl. ¶ 6. This is a paradigmatic example of a "mere[ly] conclusory statement[]" that is insufficient to plausibly allege that these three unnamed officers personally violated federal law. *Iqbal*, 556 U.S. at 678.

---

[12] This dismissal applies to the extent the operative complaint even purports to bring such a claim, which is questionable. *See* Third Am. Compl. ¶¶ 59–78.

While the complaint provides more information regarding the remaining two Doe defendants "who threatened to arrest [Anderson III] and informed him that the Smiths owned the property under the guise of 'eminent domain,'" these added allegations still fail to plausibly allege a claim under § 1983. Third Am. Compl. ¶¶ 6, 68. Although such allegations may suggest that these two officers performed their jobs poorly, they do not contain specific facts that make it plausible that the two unnamed deputies personally violated federal law. Indeed, it appears that these two officers were acting based on information that they received from the Weber County Attorney's Office that confirmed that the Smiths had the right to the disputed land. *Id.* ¶ 47. And Plaintiffs fail to explain how their threat to arrest Anderson III "for disorderly conduct" if he returned to the disputed strip, which they thought belonged to the Smiths, rises to the level of a constitutional violation. *Id.* ¶ 50. This is especially unclear because the operative complaint alleges that the concrete barriers installed by the Smiths—rather than these threats of arrest, which occurred later—is what "permanently prevented the Trust and Trust beneficiaries from being able to access the Trust's property." *Id.* ¶ 40.

Thus, Plaintiffs fail to adequately plead a § 1983 claim against the Doe defendants and these claims are dismissed with prejudice.

B.    Second Claim

The second claim alleges a civil conspiracy under 42 U.S.C. § 1985(3). Third Am. Compl. ¶¶ 79–86. But Plaintiffs' counsel conceded that this claim should be dismissed because Plaintiffs fail to allege any cognizable class-based animus. Given this concession and Plaintiffs' failure to allege class-based animus, the court dismisses the second claim with prejudice. *See Campbell v. Amax Coal Co.*, 610 F.2d 701, 702 (10th Cir. 1979) (per curiam) ("[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under

17

§ 1985[(3)]."); *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1447 (10th Cir. 1990); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

## III.    State Claims

Plaintiffs' remaining claims raise state law causes of action. Third Am. Compl. ¶¶ 87–109 (asserting claims for negligence and fraudulent concealment).[13] Defendants suggest that these claims should similarly be dismissed with prejudice because they are inadequately pled, but the court declines this request and instead refrains from exercising jurisdiction over these remaining claims.

The only apparent basis for the court's subject matter jurisdiction over the remaining state law claims is supplemental jurisdiction under 28 U.S.C. § 1367. But because this "court has dismissed all claims over which it has original jurisdiction," it now "may decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367(c). In considering how to exercise its discretion, the court must "weigh . . . the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In the present circumstances, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain," these factors overwhelmingly point against exercising jurisdiction. *Id. See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be

---

[13] In the context of their negligence claim, Plaintiffs purportedly invoke their due process rights and cite the Fourteenth Amendment of the U.S. Constitution. Third Am. Compl. ¶ 103; U.S. Const. amend. XIV. However, at the hearing, Plaintiffs' counsel conceded that this claim was brought under state tort law and failed to explain how this claim implicates the federal constitution. *Cf. Daniels*, 474 U.S. at 332 ("Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.").

dismissed as well."); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

When declining to exercise jurisdiction over remaining state law claims that were originally brought in state court, the court has "discretion to choose between dismissal without prejudice and remand." *Harrell v. Lira*, No. 24-8011, 2025 WL 251832, at *5 (10th Cir. Jan. 21, 2025); *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238–39 (10th Cir. 2020); *Carnegie-Mellon*, 484 U.S. at 357. However, as the Supreme Court has noted, a remand often "best promote[s] the values of economy, convenience, fairness, and comity" by avoiding needless expenses and ensuring that the state law claims are not unfairly barred by "[t]he operation of state statutes of limitations." *Carnegie-Mellon*, 484 U.S. at 352–53. Receiving no request from Defendants to dismiss without prejudice rather than remand, the court remands the remaining state law claims based on these general considerations.

## CONCLUSION AND ORDER

For the reasons above, the court GRANTS IN PART Defendants' motion for judgment on the pleadings. Plaintiffs' federal law claims are DISMISSED WITH PREJUDICE and their state law claims are REMANDED to the Second Judicial District Court in and for the County of Weber, State of Utah.

DATED July 1, 2026

BY THE COURT

Jill N. Parrish
United States District Court Judge